UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JACK DALY<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Case No. 24-CV-1678-JPS<br><br>**REPLY MEMORANDUM<br>IN SUPPORT OF<br>28 U.S.C. § 2255 MOTION** |

## I. INTRODUCTION

The Government's response asks this Court to do what the law forbids: to resolve a direct and material clash of affidavits on a cold record. Relying almost entirely on the self-serving, after-the-fact affidavits of Mr. Daly's former counsel—affidavits directly contradicted by a mountain of contemporaneous, objective evidence—the Government argues that the record "conclusively" shows Mr. Daly is entitled to no relief. The opposite is true. The record, when viewed in its entirety, reveals classic factual disputes that can only be resolved through an evidentiary hearing.

The Government touts the pedigrees of Mr. Daly's former counsel, suggesting their performance was "among the best money can buy." (ECF No. 15 at 29). But the Sixth Amendment guarantees effective representation, not an impressive résumé. And on this record, the performance of Mr. Daly's counsel during the critical 20-day window following his plea colloquy fell far short of that constitutional standard. During this period, Mr. Daly possessed an absolute, unfettered right to withdraw his plea for "any reason or no reason at all." Fed. R. Crim. P. 11(d)(1). The contemporaneous evidence—not revisionist history—shows a client in profound turmoil, describing himself as "50/50 at this juncture" and on the verge of filing a withdrawal

motion that his lawyers had already drafted. (ECF No. 8-3). It also shows a legal team that failed to provide the most basic, competent advice regarding the legal significance of his core concerns. Faced with a client who believed he was factually innocent and was being coerced into committing perjury, counsel provided substantively incorrect advice on the Government's burden of proof and failed to convey their own apparent belief that their client was not guilty of the crime charged.

This is not a case where the record "conclusively shows that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Instead, it is a case defined by a direct conflict between Mr. Daly's specific, documented allegations—supported by objective evidence—and his former counsel's subsequent declarations. Such a conflict necessitates an evidentiary hearing.

## II. ARGUMENT

### A. Daly's Claims Are Not Untimely

Before addressing the merits, it is essential to clarify the scope of the analysis before the Court. The Government argues—and the Court's July 16, 2025 Order noted the concern—that Mr. Daly's supporting brief and declaration improperly raise new allegations not contained in his original § 2255 motion. (ECF No. 15 at 28; ECF No. 12 at 2). Mr. Daly has raised one principal claim: that he received ineffective assistance of counsel during the 20-day window in which he possessed an absolute right to withdraw his guilty plea. The evidence of his pre-plea communications with counsel is not, as the Government implies, an attempt to assert new, time-barred claims of pre-plea ineffectiveness. Rather, it is essential historical context that is directly relevant to the prejudice analysis of the timely-filed claim.

The ultimate question of prejudice here is what Mr. Daly would have done had he been competently advised *during the withdrawal window*. To answer that question, the Court must

understand Mr. Daly's state of mind at that time. His contemporaneous communications in the months, weeks, and days leading up to his plea are the most powerful objective evidence of that state of mind. They demonstrate that his conflict, his belief in his innocence, and his conviction that he was being coerced to commit perjury were not a fleeting case of "buyer's remorse" that arose after the plea colloquy. They were a deep-seated and persistent conviction that he carried with him into and through the 20-day withdrawal period.

Proving prejudice under *Strickland* requires a petitioner to show a "reasonable probability" that the outcome would have been different. This inquiry necessarily depends on the specific circumstances of the defendant. Evidence that illuminates a defendant's long-held beliefs and motivations is therefore not just relevant, but indispensable to this analysis. The Government's attempt to cabin the Court's review to only those communications that occurred within the 20-day window is an artificial constraint designed to obscure the full picture. The record must be viewed as a whole to properly assess what a reasonable person in Mr. Daly's specific, documented position would have done if his lawyers had fulfilled their constitutional duties. The historical evidence does not change the claim; it substantiates it.

### B. An Evidentiary Hearing Is Required To Resolve Material Factual Disputes Regarding Counsel's Deficient Performance And The Ensuing Prejudice To Mr. Daly

When a petitioner raises a colorable claim of ineffective assistance, a district court *must* grant an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Accordinng to the Seventh Circuit, the "burden for receiving an evidentiary hearing is relatively light." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016). The Government, relying on little more than the self-serving and contradicted affidavits of prior counsel, cannot meet this standard.

Far from being conclusively refuted by the record, Mr. Daly's claims are substantiated by a powerful record of contemporaneous emails and text messages that paint a damning picture of counsel's performance. This objective evidence reveals a series of constitutional failures during the critical 20-day window when Mr. Daly had an absolute right to withdraw his plea for any reason or no reason at all. *See* Fed. R. Crim. P. 11(d)(1). These failures directly contradict the revisionist history now offered by his former attorneys. Where the record presents a documented factual clash between a petitioner's evidence and his former counsel's affidavits, the matter can only be resolved by testimony and cross-examination.

### C. Counsel Abdicated Their Duty to Guide Mr. Daly Through the Critical Withdrawal Decision

The record shows that in the days following his plea colloquy, Mr. Daly was in turmoil. Just four days after the hearing, counsel circulated a draft "Motion to Withdraw Guilty Plea," acknowledging the seriousness of the situation by cautioning Mr. Daly to "think very carefully about" it. (ECF No. 8-1). Mr. Daly's own words confirm his profound conflict. He saw the Government's misleading press release as "reason 101 to give serious consideration to changing course before I cross the Rubicon" (ECF No. 8-2) and told his co-defendant's counsel he was "50/50 at this juncture" about filing the motion. (ECF No. 8-3). He was, as he told his lawyers directly, engaged in a "final final deliberation." (ECF No. 14-2).

Faced with a client in such palpable distress while his absolute right to withdraw remained intact, counsel's duty was to provide him with the tools for a rational decision. This requires more than simply preparing a motion and warning of deadlines. Yet that is all the contemporaneous record shows. Counsel's affidavits now claim they engaged in "substantive and strategic communications." (ECF No. 14 ¶ 12). But these after-the-fact assertions are

unsupported by the documentary evidence. Telling a client that "time is of the essence" (ECF No. 14-2) is a logistical warning, not strategic advice.

Counsel's passivity was constitutionally prejudicial. To prove prejudice, Mr. Daly must show a "reasonable probability" that, but for counsel's errors, he would have withdrew his plea. As the Supreme Court has clarified, when evaluating such a claim, courts "should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, courts "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* Here, that contemporaneous evidence is overwhelming and powerfully substantiates Mr. Daly's claim. More than just a simple calculation of likely sentence, a defendant may reject a plea to avoid what he views as an unacceptable consequence, such as professing guilt for a crime he believes he did not commit. *Id.* (recognizing a defendant may rationally reject a plea to avoid certain deportation). The objective record shows Mr. Daly's reasons for wanting to withdraw were not frivolous; they were of profound legal and personal significance. A claim of innocence and an unwillingness to perjure oneself are precisely the types of reasons that animate a decision to risk trial.

The Government's central argument against prejudice is misplaced. According to the Government, because "there were no meritorious defenses here" and the "objective electronic evidence demonstrates" guilt, Mr. Daly cannot show prejudice. (ECF No. 15 at 24). This reasoning is precisely what the Supreme Court rejected in *Lee*. The prejudice inquiry is not about the likely outcome of a hypothetical trial; it is about the reasonable probability that the *defendant himself* would have rejected the plea. The Government's argument ignores the overwhelming contemporaneous evidence of Mr. Daly's "expressed preferences"—his "coerced plea dilemma,"

his desire to avoid lying "under oath," and his "50/50" state of mind. *Lee* commands that this evidence be considered. The Government's reliance on a co-conspirator's purported email acknowledging a felony (ECF No. 15 at 24) is a red herring. The issue is not what Mr. Pendley thought, but what Mr. Daly would have done had *his own counsel* competently advised him about his own case, his own defenses, and his own options.

D. **Counsel Provided Incorrect Advice on the Statutorily Required *Mens Rea***

On May 1, 2023, when Mr. Daly asked if the *mens rea* for a § 1001 violation was "knowing or willful," counsel responded with the unequivocal and incorrect advice: "Just knowingly." (ECF No. 8-7). This was not a reasonable simplification.

Counsel and the Government now defend this error by claiming the advice was a correct statement of Seventh Circuit law. (ECF No. 14 at 8–13; ECF No. 15 at 25-26). The Court should specifically find that does not matter. An attorney's performance can be deficient for failing to "make, or at least to evaluate, an argument that is sufficiently foreshadowed in existing case law." *Bridges v. United States*, 991 F.3d 793, 804 (7th Cir. 2021).

Here, a meritorious defense based on the "willfully" prong of § 1001 was not just foreshadowed; it was manifest. First, the plain text of the statute criminalizes statements made "knowingly *and willfully*." 18 U.S.C. § 1001(a) (emphasis added). By reading the word "willfully" out of the statute, counsel gave their client a distorted and incomplete picture of the Government's burden. Second, and most glaringly, counsel failed to advise Mr. Daly of the single most powerful tool for such a defense: the Department of Justice's own position. In briefing before the Supreme Court, the Solicitor General has taken the position that "willfully" in a similar false-statements statute requires "proof that the defendant knew his conduct was

unlawful." *See* Brief for United States in Opposition at *11, Ajoku v. United States*, 572 U.S. 1058 (2014) (No. 13-8945).

Under *Bridges*, the existence of such a clear signpost renders counsel's failure to advise their client of this defense constitutionally suspect. Competent counsel would have advised Mr. Daly that the Government's own lawyers supported a heightened *mens rea* that would be exceedingly difficult to prove in this novel political speech prosecution. The prejudice from this failure is self-evident. Armed with an accurate understanding that the Government likely had to prove Daly *knew his conduct was unlawful*—a position supported by the Justice Department itself—a reasonable defendant in Mr. Daly's "50/50" position would have seen the calculus shift dramatically in favor of withdrawal of the plea.

### C. Counsel's Own Attorney Admitted His Belief That No Conspiracy Existed.

Perhaps the most startling evidence of counsel's failure is the plain admission from one of his own attorneys. On or about July 23, 2023, after Mr. Daly texted his legal team, "There was no conspiracy," attorney Roy Dixon III replied: "I certainly agree there was no conspiracy." (ECF No. 8-12).

The Government's attempt to dismiss this as an "unfortunately phrased attempt by a junior lawyer to placate a difficult client" (ECF No. 15 at 22) is a transparent effort to avoid the obvious factual dispute this evidence creates. An attorney's admission against the interest of his firm and in direct contradiction to the plea he helped facilitate is not mere placation; it is powerful evidence that can only be tested through cross-examination. Counsel's attempt to brush this aside by labeling Mr. Dixon a "junior member of the legal team" (ECF No. 5 at 24) is both insulting and irrelevant. Mr. Dixon was an attorney on the case, and his candid admission raises a dispositive factual question that demands an evidentiary hearing: What did the rest of the defense

team believe about the merits of the conspiracy charge, and what did they communicate to Mr. Daly during the 20-day withdrawal window?

If counsel harbored a good-faith belief that the conspiracy charge was factually baseless, they had a profound constitutional and ethical obligation to convey that assessment to Mr. Daly while he was agonizing over whether to withdraw his plea. Merely advising him of "litigation risk" while privately agreeing with his claims of innocence is a fundamental breakdown of the duties of loyalty and candor. It is inconceivable that a defendant who was "still deliberating" (ECF No. 14-4) would have proceeded with his plea had he known that his own lawyer agreed he was not guilty of the crime charged. A hearing is essential to uncover the full extent of counsel's internal assessments and what was—and was not—communicated to their client.

### E. Counsel Failed to Advise Mr. Daly that the Government's § 1028A Threat Was Factually Baseless

The Government's most powerful leverage during plea negotiations was the threat of a charge of aggravated identity theft under 18 U.S.C. § 1028A, which carries a two-year mandatory minimum sentence. Counsel's own texts confirm the coercive power of this threat, warning Mr. Daly that if he withdrew his plea, he would "be indicted, including with 1028A charges." (ECF No. 14-1). The plea bargain was, in large part, a capitulation to this threat. But a recording of a conversation between Nathanael Pendley and Zachary Zynda, the alleged "victim" of the identity theft, reveals this threat was a phantom. In the recording, Zynda states that he "didn't mind helping out back then." (Recording, Ex. 104b1f4a-1681-401b-b185-c4678e6f9b54).

This is a dispositive admission. A victim of identity theft does not say he "didn't mind" his identity being stolen. Zynda's statement is an admission of consent, and consent provides "lawful authority," directly negating a central element of the § 1028A offense. This recording does not merely weaken the Government's case; it eviscerates it. The record is silent as to when,

or even if, Mr. Daly's counsel received or reviewed this recording. But this uncertainty is precisely why a hearing is required. The central question is what competent counsel *should have known* and therefore *should have advised* Mr. Daly during the 20-day withdrawal period.

Counsel's failure to properly advise Daly was profoundly prejudicial. Mr. Daly plead guilty based on a risk analysis that was fundamentally flawed. Daly was presented with a choice between a plea and a trial that included the risk of a mandatory two-year sentence, when they either had in their possession, or should have obtained earlier, evidence demonstrating that risk was illusory. A rational defendant, properly advised of this, would have viewed the decision to plead guilty in an entirely different light. The failure to provide this advice deprived Mr. Daly of the ability to make a knowing and intelligent choice and is yet another reason a hearing is required.

### III. CONCLUSION

The Government's response, which rests almost entirely on the self-serving affidavits of conflicted former counsel, cannot overcome the powerful contemporaneous evidence Mr. Daly has presented. That evidence—in Mr. Daly's own words and, critically, in his lawyers'—establishes a clear and direct conflict on numerous material facts at issue. It reveals a client in profound turmoil over his plea and a legal team that failed to provide the substantive advice necessary for him to make a knowing and intelligent decision during the critical window when his right to withdraw that plea was absolute.

Because the record does not "conclusively show that the prisoner is entitled to no relief," an evidentiary hearing is not just appropriate; it is statutorily required. 28 U.S.C. § 2255(b). This Court should grant Mr. Daly that hearing to prove his claim of ineffective assistance of counsel.

Respectfully submitted,

/s/Brandon Sample
Brandon Sample
Criminal Center LLC
1701 Pennsylvania Ave. N.W. # 200
Washington, DC 20006[1]
Tel: 202-990-2500
E-mail: brandon@criminalcenter.com

---

[1] Attorney Sample is admitted in Vermont and limits his practice to federal law matters before federal courts and federal agencies around the United States.