# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JACK DALY,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

Case No. 24-CV-1678-JPS

**ORDER**

## 1. INTRODUCTION

On December 30, 2024, Petitioner Jack Daly ("Petitioner") moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF No. 1. The Court screened Petitioner's motion in accordance with Rule 4 of the Rules Governing § 2255 Proceedings, concluding that he could proceed with his petition, directing the Clerk of Court to add Attorneys Matthew Krueger ("Attorney Krueger") and Jason Cowley ("Attorney Cowley") (together, "Counsel") as Interested Parties on the docket, and ordering Attorneys Krueger and Cowley to file an affidavit in response to Petitioner's allegations. ECF No. 3. Counsel ultimately filed two affidavits responding to Petitioner's filings, ECF Nos. 5 and 14, and moved to restrict both, ECF Nos. 4 and 13. The motions to restrict are unopposed. *See* ECF Nos. 4 and 13. Counsel also moved for a finding that Petitioner waived the attorney-client privilege as to the allegations within his opening brief and declaration in support thereof. ECF No. 10 at 1. Respondent, the United States of America ("Respondent") answered Petitioner's motion, ECF No. 6; Petitioner filed a brief in support of his motion, ECF No. 8; the Respondent

responded, ECF No. 10; and Petitioner replied, ECF No. 17. The petition is accordingly fully briefed, and all pending motions are ripe for review.

The Court will now address the merits of Petitioner's § 2255 motion. For the reasons set forth herein, the motion will be denied, and this case will be dismissed with prejudice. Counsel's motions to restrict will be denied, and the Court will make a finding that Petitioner waived his attorney-client privilege as to the allegations in his petition, opening brief, and declaration in support.

## 2. BACKGROUND[1]

### 2.1 Procedural Background

Petitioner's § 2255 motion arises from his criminal proceedings before this Court in *United States v. Jack Daly*, 23-CR-78-JPS (E.D. Wis. Apr. 27, 2023).[2] In April 2023, Respondent filed a single-count Information as to Petitioner that charged him with Conspiracy to Violate the Laws of the United States, in violation of 18 U.S.C. § 371. CR-ECF No. 1.

Petitioner filed a plea agreement that same day, pleading guilty to the single-count Information.[3] CR-ECF No. 2. The Court referred the matter of Petitioner's guilty plea to Magistrate Judge Stephen C. Dries to hold a

---

[1]For brevity, cites to facts within this section are omitted from later analysis.

[2]Docket references thereto will be cited as CR-ECF.

[3]The Court notes that this entire action may be barred by Petitioner's waiver of his right to pursue a § 2255 motion as delineated in his plea agreement. CR-ECF No. 2 at 11. Petitioner's waiver contained a carve-out for motions based on, inter alia "ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing." *Id.* Because Petitioner's grounds relate only to the advice Counsel provided to him and not their negotiations of the plea agreement, this waiver arguably applies here. However, without the benefit of briefing on the issue—despite the Court's invitation for such briefing, ECF No. 2 at 5—the Court will decline to rule on this basis.

Rule 11 plea colloquy and thereafter issue a report and recommendation on the advisability of accepting Petitioner's guilty plea. CR-ECF No. 3. Magistrate Judge Dries held a plea colloquy for Petitioner on June 8, 2023, where he advised Petitioner of his rights, charges, penalties, and fines and ensured that any plea Petitioner entered was knowing and voluntary. CR-ECF No. 9. That same day, on June 8, 2023, Magistrate Judge Dries issued a Report and Recommendation (the "R&R") that the Court accept Petitioner's guilty plea, which he found to be knowing and voluntary. CR-ECF No. 12. The R&R further notified Petitioner that he had the ability to object to any portion of the R&R within fourteen days from the date when he was served with it. *Id.* On June 28, 2023, after no objections to the R&R were filed, the Court adopted the R&R in full. CR-ECF No. 13.

On December 15, 2023, the Court sentenced Petitioner to a total term of imprisonment of 4 months. CR-ECF No. 46 at 2. Petitioner chose not to appeal his conviction and sentence. CR-ECF No. 49. On December 30, 2024, Petitioner moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel that resulted in his conviction. ECF No. 1; *see also* CR-ECF No. 58.

### 2.2    Factual Underpinnings of Petitioner's Criminal Case[4]

The Federal Election Commission ("FEC") is an independent regulatory agency created by Congress to "administer and enforce

---

[4]This subsection is provided mainly for background information. The facts in this subsection are primarily drawn from the petition's fact section and have not been disputed by Respondent nor by Attorneys Krueger and Cowley. *See* ECF No. 1 at 15–22. The Court draws facts from additional sources where relevant.

The Court further notes that because Petitioner's habeas petition is not signed by Petitioner under penalty of perjury, ECF No. 1 at 12, the statements contained therein are not part of the evidentiary record. *United States v. Hoover*, 246

campaign finance laws, including overseeing disclosure of campaign finance information . . . and monitoring the use of funds by political committees." ECF No. 1 at 15 (citing 52 U.S.C. § 30106). A political action committee ("PAC") is a political committee that "receives contributions or makes expenditures exceeding $1,000 in connection with federal elections." *Id.* (citing 52 U.S.C. § 30101(4) and 11 C.F.R. § 100.5(a)). A draft PAC is a specific type of PAC that exists "to build grassroots support to persuade an individual to become a candidate." *Id.* Draft PACs must register with the FEC and file regular reports disclosing contributions and expenditures. *Id.* (citing 52 U.S.C. §§ 30103, 30104; 11 C.F.R. §§ 102.2, 104.3). A draft PAC may include the name of the individual it seeks to draft and must indicate that it is a draft committee. 11 C.F.R. § 102.14(b)(2).

Petitioner, at the time he was charged in the underlying criminal proceedings, held a law degree and was licensed to practice law. ECF No. 5 at 3; ECF No. 14 at 15. He further had significant legal and political experience, having held legal positions in both the Executive Branch and Legislative Branch. ECF No. 14 at 15.

---

F.3d 1054, 1064 (7th Cir. 2001) (J. Diamond Rovner, concurring) ("[The Seventh Circuit] routinely disregard[s] arguments premised upon factual assertions that are not borne out by the record." (collecting cases)); *Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 886 (N.D. Ill. 2022) ("An unsworn statement that lacks a certification under penalty of perjury has no evidentiary value . . . . From an evidentiary standpoint, it's weightless."). While the Court does recognize that the § 2255 form's signature page is somewhat confusing for petitioners who are not currently incarcerated, *see id.* (combining the certification under penalty of perjury with the declaration that the motion was "placed in the prison mailing system" on a certain date), Petitioner could certainly have filed a sworn declaration accompanying his petition (as he did his opening brief) and he chose not to do so. The Court will therefore consider factual allegations within Petitioner's briefs and petition only insofar as they are supported by Petitioner's declaration made under penalty of perjury, ECF No. 9, or by exhibits within the record.

Petitioner registered the "Sheriff David Clarke for U.S. Senate (Official Draft Campaign) Super PAC" (the "Draft PAC") with the FEC on January 19, 2017. ECF No. 1 at 16. In that registration form, Petitioner identified himself as the Chairman, Treasurer, and Custodian of Records for the Draft PAC. *Id.* Petitioner listed the purpose of the Draft PAC as encouraging Sheriff David Clarke ("Clarke"), then the Sheriff of Milwaukee County, Wisconsin, to run for U.S. Senate in the 2018 election. *Id.*

Clarke made the following statements in interviews when asked about a potential senate run:

- March 3, 2017: "I'm flattered by the energy and enthusiasm nationwide for such a thing. But that's why it's a draft movement at this point. They're going to have to get me in there kicking and screaming right now. But I never say never. I haven't totally closed the door."

- May 10, 2017: Clarke described a Senate run as "highly unlikely."

- July 21, 2017: Clarke stated that he was not running for Senate, referred to a "scam PAC" and urged those listening to "hang onto [their] money."[5]

*Id.* at 17–18. On July 22, 2017, Petitioner emailed back and forth with another individual who was involved in the Draft PAC's activities, Nathanael Pendley ("Pendley"), about Clarke's comments the day before; the subject-line of this email exchange was "OMG." CR-ECF No. 2 at 17.

The Draft PAC sent out a solicitation for donations via direct mail on August 2, 2017. ECF No. 1 at 18. This solicitation included language that Clarke was "willing to run" and would "throw his hat in the ring." ECF No. 5 at 5–6; CR-ECF No. 2 at 18; *see also* ECF No. 1 at 17. The Draft PAC sent a

---

[5]The parties dispute whether Clarke's reference to a scam PAC was clearly about the Draft PAC. *Contrast* CR-ECF No. 2 at 16–17 *with* ECF No. 1 at 18.

Case 2:24-cv-01678-JPS    Filed 06/30/26    Page 5 of 35    Document 18

solicitation via email on September 2, 2017, stating that Clarke's recent resignation as Milwaukee County Sheriff would "at long last free him to prepare for a U.S. Senate campaign in earnest – something he was unwilling to do while still taking taxpayer dollars to serve Milwaukee County. That means it's showtime folks!" CR-ECF No. 2 at 17; *see* ECF No. 1 at 18–19. This solicitation again failed to mention or suggest that Clarke had stated that he would not run for Senate. CR-ECF No. 2 at 17; ECF No. 1 at 18–19.

Also on September 2, 2019, Clarke emailed Petitioner stating, "[W]hat is this? You are well aware that I am NOT running for U.S. Senate. I announced that a month ago and you were contacted by a local newspaper writer about my announcement. Do NOT raise any more money using my name." *Id.* at 19. Petitioner responded to Clarke via email, communicating that he had already stepped back from the Draft PAC's operations and as its treasurer, that a new treasurer had taken over, and that the Draft PAC was winding down its activities. ECF No. 1 at 19; *see also* CR-ECF No. 2 at 17.

A few days later, on September 6, 2017, Petitioner and Pendley called Zachary Zynda ("Zynda"), then intern for the Draft PAC, and told him that he would receive a title with the Draft PAC if they could use his name in connection with it. CR-ECF No. 2 at 18. Petitioner and Pendley then established an email account that appeared to be associated with Zynda, but the account recovery email and phone number actually belonged to Pendley. *Id.* The next day, on September 7, 2017, the Draft PAC submitted an amended registration form that now identified Zynda as the new treasurer of the PAC. ECF No. 1 at 19. That form listed an effective date of

August 28, 2017.[6] *Id.* Despite what the form stated, Zynda was not performing the duties of treasurer for the Draft PAC; rather, Petitioner continued to serve the same treasurer functions as he had prior to the effective date of the form. CR-ECF No. 2 at 18; ECF No. 5 at 6.

The Draft PAC changed its name—omitting any reference to Clarke—in January 2018 and received its last donation around the same time. *Id.* at 19–20. Despite this, the Draft PAC kept filing regular reports to the FEC as required by law; these reports identified Zynda as the treasurer. *Id.* at 20. When interviewed by investigators, Zynda stated that "his role was limited to agreeing to let his name be used on official filings[,] and that he did not perform any substantive treasurer duties" for the Draft PAC. *Id.* Zynda contacted Petitioner in 2022, expressing a desire to be removed as the Draft PAC's treasurer, at which time Petitioner instructed Zynda not to contact the FEC directly and paid Zynda $5,000. ECF No. 5 at 7; ECF No. 5-1 at 2.

Over the course of the Draft PAC's existence, Petitioner controlled its bank accounts. *Id.* He caused three separate cash transfers, totaling $75,000, to be made from the Draft PAC's accounts to his personal bank accounts and he did not disclose these transfers to the FEC. *Id.* The last of these transfers occurred in May 2018. *Id.*

---

[6]Nothing in the record states that Petitioner was the one to specifically submit this form, but he was logged into the FEC's website the evening the form was submitted. CR-ECF No. 2 at 18.

### 2.3    Petitioner's Assistance of Counsel[7]

In November 2022, after becoming aware of an ongoing investigation being conducted by the government into Petitioner and his activities with the Draft PAC, Petitioner retained Attorney Krueger and Attorney Cowley. ECF No. 5 at 3. At the time he was retained, Attorney Krueger was a partner at Foley and Lardner LLP ("Foley") who focused "principally on responding to government investigations and actions, and complex litigation." *Id.* at 1. Prior to joining Foley, Attorney Krueger served both as an Assistant United States Attorney ("AUSA") in the Eastern District of Wisconsin and as the United States Attorney for the Eastern District of Wisconsin. *Id.* He had been practicing law for approximately sixteen years. *Id.* At the time he was retained, Attorney Cowley was a partner at McGuireWoods LLP who focused "principally on criminal investigations and trials and regulatory enforcement proceedings," and he had "extensive experience in white collar matters." *Id.* at 2. Prior to joining McGuireWoods, Attorney Cowley served over a decade as an AUSA. He had been practicing law for eighteen years. *Id.*

Petitioner's Counsel undertook "an extensive" factual investigation into the Draft PAC and Petitioner's involvement as well as "significant legal research of potential defenses to the contemplated charges against" Petitioner. *Id.* at 3. They also engaged several other attorneys and experts for their advice.[8]

---

[7]The facts in this subsection are primarily drawn from affidavits from Attorneys Krueger and Cowley. ECF Nos. 5 and 14. The Court notes anything specifically disputed by Petitioner and draws facts from additional sources where relevant.

[8]This includes Elliot Berke, Managing Partner of Berke Farah LLP, who specialized in campaign finance law and who has "extensive experience" with

"[B]ased on [this] factual investigation and legal analysis, [Counsel] concluded [that] there was litigation risk to [Petitioner] should he be charged." *Id.* at 4. In other words, while Petitioner's Counsel felt that "there were defenses that could have been asserted in pretrial filings and at trial," there was also a "risk that a court would allow the case to proceed to trial and that a jury could vote to convict [Petitioner]." *Id.*

Counsel presented and thoroughly explained to Petitioner the "possible defenses" and the "risks he faced should the case proceed to trial." *Id.* at 4. Specifically, they advised Petitioner that if the facts they had learned "were presented at trial, [Petitioner] faced a serious risk that a jury could find beyond a reasonable doubt that [he] engaged in fraudulent conduct with the requisite intent to defraud donors to the Draft PAC and that he made a false statement to the FEC." *Id.* at 8. Eventually Petitioner instructed them to "obtain the best possible plea agreement." *Id.* at 4.

Counsel had multiple interactions with the United States Attorney's Office for the Eastern District of Wisconsin ("USAO"). In February 2023, the AUSAs investigating Petitioner sent Counsel a letter with an overview of evidence that they believed supported charging Petitioner. ECF No. 5 at 9 (citing ECF No. 5-1). Notably, this document contained, inter alia, all the facts about Petitioner's actions with respect to the Draft PAC described

_____

PACs and the FEC; John Moran, partner at McGuireWoods, who had experience with constitutional law issues (having served in senior roles at the United States Department of Justice and the Office of White House Counsel, and having served as law clerk to the Honorable Antonin Scalia, Associate Justice of the United States Supreme Court); George J. Terwilliger III, partner at McGuireWoods who had served as the Deputy Attorney General for the United States Department of Justice and as the United States Attorney for the District of Vermont; and Campaign Finance Solutions, a campaign finance consulting firm. ECF No. 5 at 3–4.

above in Section 2.2. On March 3, 2023, Counsel submitted a position paper to the USAO in support of their belief that Petitioner should not be prosecuted. ECF No. 5 at 9 (citing ECF No. 5-2). That position paper was 29 pages long, cited to 46 exhibits, and laid out detailed legal and factual arguments grounded in the First Amendment, Due Process Clause, and the relevant statutes of limitations, among other things. ECF No. 5-2. Petitioner "played a substantial role in crafting the position, providing revisions and input, and approving of the submission of the position paper to [the investigating] AUSAs . . . ." ECF No. 5 at 9.

On March 9, 2023, Counsel participated in a call with the investigating AUSAs, who stated that they had reviewed the March 3 position paper but still intended to move forward with prosecuting Petitioner, and their supervisors agreed. *Id.* They further stated that they were contemplating the following charges: wire fraud, wire fraud conspiracy, false statements to the FEC, and aggravated identity theft. *Id.* at 10. On March 22, 2023, Counsel submitted another position paper to USAO leadership. *Id.*; ECF No. 5-3. That paper was 20 pages in length and cited an additional 20 exhibits; beyond reiterating the points of the first position paper, the submission also addressed new information provided by the AUSAs on the March 9 call, addressed the specific charges as laid out by the AUSAs on that call, and requested a meeting with leadership within the office. ECF No. 5 at 10–11; ECF No. 5-3. As with the first position paper, Petitioner reviewed this paper, provided "numerous revisions and input," and approved of it prior to its submission. *Id.* at 11. On April 7, 2023, USAO leadership declined the request to meet with Counsel, but did indicate that Counsel could submit additional information prior to April 17, 2023 and stated that the USAO planned to seek charges by May 2023. *Id.*

Given this impending deadline, Counsel negotiated a plea agreement with the USAO. *Id.* at 11–13. They "counseled [Petitioner] extensively in connection with the negotiated plea agreement . . . and discussed with him at length the risks and benefits of both pleading guilty and disputing charges through pretrial litigation and trial." *Id.* at 13. They "did not advise [Petitioner] that he should plead guilty or that he should decline the plea agreement and proceed to be charged. Instead, [they] advised him that he had to make a personal risk-based determination of which course of action to take." *Id.*

After entering a guilty plea before the Magistrate Judge Dries, Petitioner considered whether he should withdraw the plea prior to the Court accepting it. ECF No. 1 at 36; ECF No. 5 at 13. Petitioner's Counsel advised him that he had the "unfettered right" to withdraw his plea at any time prior to its acceptance, and they provided him with a draft motion to withdraw the plea. ECF No. 5 at 13. Counsel attest that "during that period in mid-June before the Court accepted [Petitioner]'s plea . . . [they] spoke to [Petitioner] at length about the risks and benefits of proceeding with the plea or withdrawing the plea and proceeding to be charged." *Id*. at 14.

### 3. LEGAL STANDARD

A person serving a sentence imposed by a federal court who is

claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "Relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or

where a fundamental defect has occurred which results in a complete miscarriage of justice.'" *United States v. Coleman*, 763 F.3d 706, 708 (7th Cir. 2014) (quoting *Blake v. United States*, 723 F.3d 870, 878–79 (7th Cir. 2013)).

**4. MERITS ANALYSIS**

**4.1 Grounds for Relief**

The Court begins by addressing the timing of Petitioner's various stated grounds for relief. In his petition itself, Petitioner asserts two "grounds" for relief, both alleging ineffective assistance of counsel. ECF No. 1 at 4–6. Specifically, Petitioner claims that his Counsel were ineffective (1) "in connection with [Petitioner]'s guilty plea" and (2) "for failing to fully advise [Petitioner] about the risks and benefits of withdrawing his plea before it was accepted by the District Court." *Id.* at 4, 5 (capitalization modified). Petitioner then lists several sub-grounds under Ground One, specifically, that Counsel failed to (1) advise Petitioner about the compelled speech doctrine, (2) properly advise Petitioner about a statute of limitations defense, (3) challenge the factual basis for Petitioner's guilty plea, and (4) advise Petitioner on a "fair warning" defense. *Id.* at 22–33. As for Ground Two (alleged ineffective assistance of counsel related to Petitioner's decision not to withdraw his guilty plea), Petitioner merely reiterates sub-grounds (1) and (4) above. *Id.* at 33–35. The Court screened these grounds and sub-grounds *only*. ECF No. 3.

Petitioner's brief in support of his petition pivots from these theories. First, he no longer separates his legal theories into two grounds (ineffective assistance related to his decision to plead guilty and, separately, related to his decision not to withdraw his guilty plea). In fact, Petitioner's opening brief lists Ground Two and the previously asserted sub-grounds to Ground One all as independent arguments. ECF No. 8 at 8–14. Petitioner altogether

abandons two sub-grounds. He abandons sub-ground (2) that Counsel failed to properly advise Petitioner about a statute of limitations defense. *See generally id.* (nowhere mentioning statute of limitations). He also abandons sub-ground (3) that Counsel failed to challenge the factual basis for his plea, at least insofar as he originally alleged that Counsel should have challenged the factual basis because it "was insufficient to support a conviction under the elements required for conspiracy to defraud the United States." *See generally id.* (nowhere discussing the elements of conspiracy to default the United States). Petitioner's brief also adds an entirely new argument—that Counsel "provided legal advice that appears to have been materially incorrect" regarding the mens rea for Petitioner's charged crime. *Id.* at 11–12. Lastly, his opening brief reframes his argument that Counsel failed to challenge the factual basis for the plea agreement to argue instead that Counsel "failed to act on their own stated belief that no conspiracy existed." *Id.* at 12–13 (capitalization altered).

As if these changes were not confusing enough, Petitioner pivots yet again in his reply brief. While he utilizes the same phrase that has already carried two separate contexts ("factually baseless"), this time he uses it to argue that Counsel were ineffective because they failed to advise him that the USAO's § 1028A (aggravated identity theft) threat was baseless. Nowhere in Petitioner's petition or opening brief, or even in his declaration in support of his petition, does he make or even allude to this argument. *See generally* ECF Nos. 1, 8, 9.

In its opposition brief, Respondent objects to two things as untimely: first, Petitioner's argument regarding allegedly false advice about the mens rea requirement of the crime with which he was charged, and second, Petitioner's declaration that asserts "the putative effect of any alleged

deficiencies." ECF No. 15 at 28 ("To the extent [that Petitioner's opening] brief and [accompanying] declaration attempt to invoke legal theories not suggested by the original petition [or] rely on facts not originally asserted, . . . [Respondent] objects to this material as untimely." (citing *Coleman v. United States*, 79 F.4th 822, 829 (7th Cir. 2023))). Despite this objection, Respondent attempted to respond to each of the arguments above, except the aggravated identity theft argument which was raised for the first time in Petitioner's reply brief.

When a litigant attempts to introduce new factual bases for his relief sought through briefing, rather than formal amendment, it is called "constructive amendment." *Ollison v. Gossett*, 136 F.4th 729, 739 (7th Cir. 2025). While "district courts retain discretion to interpret new factual allegations or claims presented in a [petitioner]'s briefs as a constructive motion to amend, . . . [i]t will rarely be appropriate to do so." *Id.* at 740 (quoting *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488, 490 (7th Cir. 2023)). It is not appropriate here. In fact, any constructive amendment must be denied because Petitioner filed his briefs well after the one-year limitations period for his § 2255 claim had run. ECF No. 3 at 2–3 (noting that Petitioner filed his petition on the last day he timely could have (citing 28 U.S.C. § 2255(f); FED. R. APP. P. 4(b)(1)(A); and CR-ECF No. 46)).

The relevant question here, then, is which, if any, of Petitioner's arguments asserted for the first time in his briefs "relate[] back" to his petition. *Beason v. Marske*, 926 F.3d 932, 937–38 (7th Cir. 2019) (Amending a § 2255 motion after the one-year limitations period has run is available only if the new claim "relate[s] back to the claim for relief asserted in [the operative] § 2255 motion"). An amendment relates back to the original petition "even where an amendment 'invokes a legal theory not suggested

by the original [petition] and relies on facts not originally asserted,' . . . 'so long as the original and amended petitions state claims that are tied to a common core of operative facts.'" *Coleman*, 79 F.4th at 829 (quoting *Mayle v. Felix*, 545 U.S. 644, 656 (2005)). Put another way, the new arguments are untimely if they "differ in both time and type from those the original pleading set forth." *Beason*, 926 F.3d at 938 (quoting *Mayle*, 545 U.S. 644 at 650).

As to the first new legal theory that Counsel "provided legal advice that appears to have been materially incorrect" regarding the mens rea for Petitioner's charged crime, *id.* at 11–12, it introduces completely new facts and evidence and is different in both "time and type" from each of Petitioner's timely grounds for relief. *Beason*, 926 F.3d at 938 (citation omitted). Petitioner argues that he has "raised one principal claim: that he received ineffective assistance of counsel during the 20-day window in which he possessed an absolute right to withdraw his guilty plea,"[9] and that the evidence about Attorney Cowley's mens rea advice is merely "essential historical context that is directly relevant to the prejudice analysis of the timely-filed claim." ECF No. 17 at 2. This is belied by Petitioner's brief, which devotes an independent section of analysis to this mens rea argument to support the overall argument that "counsel's performance was constitutionally deficient." ECF No. 8 at 8, 11. To the extent Petitioner intends to argue that Attorney Cowley was constitutionally deficient in

---

[9]This argument, stated in Petitioner's reply, only adds to the Court's confusion about which grounds Petitioner is maintaining, since his petition itself does not raise "one principal claim," related to the "20-day window" between the plea colloquy and the Court accepting Petitioner's guilty plea, ECF No. 17 at 2, but rather, two claims: one related to the 20-day window and one related to Petitioner's entry into the plea agreement. *See generally* ECF No. 1.

providing his advice regarding the mens rea requirement, the Court rejects this argument as an untimely constructive amendment. The Court will therefore consider the underlying facts and argument only as "historical context . . . relevant to the prejudice analysis." ECF No. 17 at 2.

As for Petitioner's reframed argument that his counsel "failed to act on their own stated belief that no conspiracy existed." ECF No. 8 at 12–13 (capitalization altered), the Court will consider it timely because his petition did make the cursory statement that Petitioner's "own counsel texted [him] that he did not believe that [Petitioner] participated in a conspiracy." ECF No. 1 at 31. Thus, while an underdeveloped argument in the petition itself,[10] the Court finds Petitioner's significant expansion of this argument in his opening brief to be of the same "time and type" as his timely grounds. *Beason*, 926 F.3d at 938 (citation omitted).

Petitioner's argument—made only in his reply brief—that Counsel was ineffective because they failed to advise him that the USAO's § 1028A (aggravated identity theft) threat was baseless is clearly based on new facts and legal theories. No argument or factual assertions prior to Petitioner's reply could be construed as even hinting toward this argument. The Court thus finds it to be untimely and will consider it no further. *Beason*, 926 F.3d at 938 (citation omitted); *United States v. Waldrip*, 859 F.3d 446, 450 n.2 (7th Cir. 2017) ("Arguments raised for the first time in a reply brief are waived." (citing *Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011)).

Finally, the Court will decline to analyze Petitioner's abandoned arguments. *C.f. Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003)

---

[10]The Court notes that, while it did not screen this as ground in its screening order (because Petitioner did not expressly refer to it as one), Respondent, at least, had the opportunity to respond to these arguments in its response brief.

(deeming abandoned a claim that was not delineated in a brief in opposition to summary judgment (collecting sources)). As Respondent notes in its opposition, Petitioner "has seemingly abandoned" the sub-ground related to his counsel's failure to sufficiently advise him on a statute of limitations defense. ECF No. 15 (noting that this argument "goes unmentioned" in Petitioner's opening brief (citing ECF No. 8)). Also unmentioned in Petitioner's opening brief is the argument that his Counsel were ineffective because they failed to challenge the substantive basis for Petitioner's guilty plea insofar as he was charged with conspiracy to defraud the United States. *See generally* ECF No. 8. That might be, as Respondent points out, because Petitioner's argument applied only to a charge that did not apply to Petitioner; he was charged with conspiracy to violate the laws of the United States, not conspiracy to defraud the United States (which has an additional scienter requirement). ECF No. 1 at 29–31; ECF No. 15 at 21–22. Petitioner did not respond in his reply brief to Respondent's arguments that he had abandoned these grounds, which only further supports the Court's finding that these grounds are waived. *Brumfield, Tr. for Ascent Trust v. IB LLC*, 586 F. Supp. 3d 827, 838 n.3 (N.D. Ill. 2022) ("Arguments abandoned in a reply brief are generally deemed waived." (citing *United States v. Farris*, 532 F.3d 615, 619 (7th Cir. 2008)); *see Speed v. Kia Am.*, 25-CV-297-JPS, 2026 WL 658910, at *2 (E.D. Wis. Mar. 9, 2026) (describing the lack of mention in a reply brief as to opposing party's prejudice argument as "deafening" (citation omitted)). The Court will analyze these claims no further.

Given the inconsistent way in which Petitioner has asserted his claim(s) for relief, the Court will simplify its analysis by merely discussing his claim of ineffective assistance of counsel *overall*, breaking its analysis down into each timely asserted, non-waived "sub-ground" supporting

Petitioner's claim that Counsel were ineffective. *See infra* Section 4.2. Those grounds are as follows: that Attorneys Krueger and Cowley were ineffective by failing to (1) advise Petitioner about a defense related to the compelled speech doctrine, (2) properly advise Petitioner about a fair warning defense,[11] and (3) act on their belief that no conspiracy existed.

### 4.2 Ineffective Assistance of Counsel

The Court begins by laying out the legal standard for a claim based on alleged ineffective assistance of counsel.

Courts apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) to evaluate the effectiveness of counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). "The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea" and at sentencing. *Lee v. United States*, 582 U.S. 357, 363 (2017) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) and citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)); *Eddmonds v. Peters*, 93 F.3d 1307, 1319 (7th Cir. 1996) (citing *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996) and *Strickland*, 466 U.S. at 690–91).

"A party asserting ineffective assistance of counsel bears the burden of establishing two elements: (1) that his . . . counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake*, 723 F.3d at 879 (citing *Strickland*, 466 U.S. at 687–88; *United States v. Jones*, 635 F.3d 909, 915

---

[11]The Court notes that Petitioner abandoned this ground by failing to mention it in both his opening brief and his reply brief. *See* ECF Nos. 8 and 17; *C.f. Palme,* 327 F.3d at 597–98; *Brumfield,* 586 F. Supp. 3d at 838 n.3 (internal citation omitted). However, because Petitioner *did* reference this ground briefly in his declaration in support of his opening brief, *see* ECF No. 9 at 3, and in the interests of being thorough, the Court will analyze it.

(7th Cir. 2011); and *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009)). "[A] court does not need to address the *Strickland* prongs in any particular order. If one prong is found to be insufficient, the court need not address the other prong." *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014) (citing *Strickland*, 466 U.S. at 697).

With respect to the first prong, the *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quoting *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997)) (internal quotation marks omitted). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995) ("[B]ecause counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel."). "Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone*, 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; and *Holman v. Gilmore*, 126 F.3d 876, 881–84 (7th Cir. 1997)).

Meanwhile, the prejudice prong is not met merely by a showing that "counsel's errors might have had an effect on the outcome." *Ruhl*, 743 F.3d at 1091. Instead, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 1091–92 (quoting *Strickland*, 466 U.S. at 694).

### 4.2.1 Compelled Speech Doctrine

Petitioner argues that the USAO's charging theory "relied on" the Draft PAC's "omission of . . . Clarke's July 21, 2017[] public statement that he would not run for Senate" in its subsequent solicitations. ECF No. 1 at 22. Requiring such a "disclaimer[]" about Clarke's statements, Petitioner argues, would constitute compelled speech, "which is presumptively unconstitutional under well-established First Amendment principles." *Id.* Petitioner asserts that his Counsel were deficient because they "failed to recognize and advise [him] on the compelled speech doctrine." ECF No. 8 at 9. Counsel assert that they "advised [Petitioner] that the [USAO's] charges raised First Amendment issues, which would provide him with a potential defense if the case moved forward, and [Counsel] argued to the [USAO] that those First Amendment issues undermined their case." ECF No. 5 at 16 (citing ECF No. 5-2). Counsel were aware of the very cases Petitioner cites to support the allegedly missed compelled speech doctrine theory and, indeed, even cited them in their first position paper to the investigating AUSAs. ECF No. 5 at 18. Consulted constitutional law expert, Moran—*see supra* note 8, further represents that he was aware of the compelled speech doctrine and "incorporated" it into that same position paper. ECF No. 5 at 18.

Petitioner's Counsel advanced a lengthy First Amendment argument on Petitioner's behalf, one that "focused on the notion that the [USAO] was seeking to punish [Petitioner] for allegedly false speech about politics, rather than the notion that [it] was seeking to compel him to make certain disclosures . . . ." *Id.* at 16; ECF No. 5-2 at 6–10. Both theories, if correct, would land the charged conduct in the same legal territory: such a

"regulation of speech . . . must fail unless the [USAO] can satisfy strict scrutiny." *Id.* at 17 (citing ECF No. 5-2 at 7 and ECF No. 1 at 23–24). Petitioner disputes that the two theories are interchangeable because "[o]ne governs the *prohibition* of speech, while the other governs its *compulsion*." ECF No. 8 at 11 (emphasis in original). Petitioner fails, however, to address the argument that regardless of what the doctrine does regarding speech, assuming a court was persuaded by them, both theories would have the same legal result: strict scrutiny in the legal theory underpinning at least part of Respondent's case. Petitioner merely argues in conclusory fashion that, had his Counsel advised him about the compelled speech doctrine, he would have been able to "assess the true strength of his case and . . . make an informed decision about whether to withdraw his guilty plea." *Id.*

Respondent argues that Counsel "advanced a potent First Amendment defense," and that "the compelled speech doctrine does not 'address the core of the [USAO's] theory,' which was 'premised on affirmative misrepresentations and misleading statements,'" rather than omissions. ECF No. 15 at 18, 19 (quoting ECF No. 5 at 17–19). Respondent further argues that "even if [C]ounsel's performance on this point were deficient, there is no reason to believe that a First Amendment defense more narrowly focused on the compelled speech doctrine would have changed Petitioner's decision to plead guilty." *Id.* at 20 (arguing that Petitioner's post hoc assertion that he "would have treated [advice on the compelled speech doctrine] as a strong reason to withdraw [his] plea" is inconsistent with contemporaneous evidence (quoting ECF No. 9)).

Petitioner fails both prongs of the *Strickland* standard. Even with the most generous reading, Petitioner at best argues that his Counsel should have advised him of a slightly different First Amendment theory that had

the same practical implications as the theory Counsel did advise him about. What's more, both theories have a plausible connection to the USAO's charging theory; this is *not* a case where the compelled speech doctrine clearly had more factual merit than the First Amendment theory advanced by Counsel. The *Strickland* standard is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *Shukri*, 207 F.3d at 418 (internal citation and quotation marks omitted). There is a "strong presumption" that counsel's decisions constitute reasonable litigation strategy. *Strickland*, 466 U.S. at 689 (internal citation omitted). The Court will not indulge Petitioner in second guessing the reasonable litigation strategy choices of his Counsel; Petitioner has failed to meet the "heavy burden" of showing that his Counsel were constitutionally deficient related to the compelled speech doctrine. *Trevino,* 60 F.3d at 338; *see Harrington v. Richter,* 562 U.S. 86, 109 (2011) ("Although courts may not indulge '*post hoc* rationalization' for counsel's decisionmaking that contradicts the available evidence of counsel's actions . . . neither may they insist counsel confirm every aspect of the strategic basis for his or her actions." (citation omitted)); *id.* at 110 ("*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" (quoting 466 U.S. at 687) (quotation marks omitted)).

Petitioner further fails to show that any alleged deficiency of Counsel, even if there were one, prejudiced him. Petitioner was a lawyer himself, and he does not dispute Counsel's assertions that he reviewed and edited both position papers in his case. *See United States v. Taglia*, 922 F.2d 413, 417 (7th Cir. 1991). He was well aware of the legal significance of signing the plea agreement and affirming that his intention to plead guilty was knowing and voluntary at the plea colloquy. He is further now aware

that even if successfully argued, the compelled speech doctrine would have had no different legal consequence than the very First Amendment argument that his Counsel advised him about. Petitioner's statement that had his Counsel "explained how the compelled speech doctrine might [have] appl[ied] to his case[,] . . . [he] would have treated it as a strong reason to withdraw his plea," does not provide a basis for the Court to find prejudice. ECF No. 9 at 3. Petitioner has shown no "reasonable probability that, but for [C]ounsel's [alleged] errors, the result of the proceeding would have been different." *Ruhl*, 743 F.3d at 1091–92 (citation omitted). His statement does not so much as claim that he would have withdrawn his guilty plea if Counsel had advised him on the compelled speech doctrine, merely that it would have provided a "strong reason" to withdraw his plea.[12] ECF No. 9 at 3.

While the Court can appreciate that Petitioner had some doubts about entering a guilty plea that would certainly change his life moving forward—indeed, the Court would be surprised if anyone with no prior criminal history could make such a decision free from any doubt—none of Petitioner's evidence suggests that different advice from his Counsel would have changed his decision. He does not state in his declaration that he would have certainly withdrawn his plea had he received different legal advice, and such a claim alone would be insufficient to show prejudice in any instance. *Berkey v. United States*, 318 F.3d 768, 773 (7th Cir. 2003).

---

[12]The Court credits Petitioner's affidavit over his petition's characterization that different advice would have caused Petitioner to contest the charges rather than plead guilty; this is because the petition was not signed under penalty of perjury by Petitioner (in fact, it was not signed by Petitioner at all, just by his attorney). *See* ECF No. 1 at 12, 36; *supra* note 4.

Further, while there is certainly some evidence to suggest that Petitioner was questioning withdrawing his plea, the record also reflects that Counsel were available to address any questions or concerns he had, that he was either 50/50 about the plea decision or was leaning in favor of keeping his guilty plea during that 20-day window, and that he never directed Counsel to file the motion to withdraw that they prepared. ECF No. 14 at 22–23; *see* ECF Nos. 8-1, 8-2, 8-3, 8-9, 8-14, 14-1, 14-2, 14-3, 14-4; *see also* ECF No. 14 at 20 ("It was clear that risk mitigation and avoiding trial were critical factors in [Petitioner's] contemplating pleading guilty. . . . [T]he Plea Agreement accomplished such risk mitigation." (citation omitted)). The record does not support a reasonable likelihood that Counsel's slight change in strategy would have caused Petitioner to suddenly change course and withdraw his plea. The Court declines to find prejudice as to this ground for relief.

### 4.2.2  Fair Warning Defense

Petitioner next argues that his Counsel "failed to investigate a due process defense," grounded in the Due Process Clause's "fair warning requirement," which "prohibits the government from prosecuting individuals under statutes that do not provide adequate notice that specific conduct is criminal." ECF No. 1 at 31–32 (citing *United States v. Lanier*, 520 U.S. 259, 265 (1997)). Specifically, Petitioner alleges that the contemplated charges "rested on a novel application of fraud statutes to omissions in political speech and routine administrative filings," which violated Petitioner's due process rights. *Id.* at 32. Counsel dispute that they failed to investigate this defense, asserting instead that they "discussed notice and the Due Process Clause issue *at length* with [Petitioner]." ECF No. 5 at 25

(emphasis added) (citing ECF No. 5-2). Counsel's position paper to the investigating AUSAs support that Counsel had investigated the fair warning defense. *See* ECF No. 5-2 at 3 (describing the USAO's theory as "an entirely novel theory of fraud in the area of protected political speech"); *id. at* 6 (describing the USAO's theory as "a wholly novel application of the wire fraud statute in an arena of conduct covered by broad First Amendment protections"); *id.* at 7 (describing the USAO's theory as "aggressive and novel"); *id.* at 10 (arguing any enforcement action should be brought by the FEC "in order to comport with due process and other constitutional guarantees"). Respondent asserts that the fair warning/due process issue "was central to their pre-indictment negotiations with the [USAO]" and was repeatedly referenced in both their position papers. ECF No. 15 at 23 (citing ECF No. 5). Petitioner's only mention of the issue in his briefs is to reiterate that he "believed" and "still believe[s]" that the USAO was charging for "conduct that had never before been charged criminally" and that this was "[o]ne reason [that he] would have withdrawn [his guilty] plea." ECF No. 9 at 3.

The Court will summarily set aside this ground. Petitioner has provided no basis whatsoever to question Counsel's performance as to this issue. The evidence in the record suggests that Counsel emphasized that the USAO's case was novel and that due process concerns counseled against criminally charging Petitioner. *See* ECF No. 5 at 25–26; ECF No. 5-2 at 3, 6 ("Your theory would represent a wholly novel application of the wire fraud statute in an arena of conduct covered by broad First Amendment protections."); 28 ("Allowing the primary PAC regulator to take the lead in a novel theory of wrongdoing in a space with little regulatory guidance is the appropriate course of action and consistent with the Attorney General's

recent guidance."); 28 ("[T]his is plainly an aggressive and novel theory."). Indeed, Petitioner's own declaration suggests that he was aware of this defense at the time he pled guilty, ECF No. 9 at 3; the Court cannot imagine how he would show that he suffered any prejudice.

Petitioner has failed to meet his burden of showing that Counsel were deficient with respect to this ground and that any alleged deficiency prejudiced him. The Court will therefore deny Petitioner any relief as to this ground.

### 4.2.3 Belief that No Conspiracy Existed

Petitioner asserts that his legal team held a "sustained belief that his plea was factually false and legally unjust," and that Counsel's performance was constitutionally deficient because they failed to "advise [Petitioner] that their own assessment of the case provided a powerful argument for withdrawal of actual innocence." ECF No. 8 at 6, 13. This argument is utter malarkey. Counsel's affidavits are clear that, while they believed Petitioner had several defenses he could assert in pre-trial motions and at trial, he also faced significant risk of being convicted of the contemplated offenses if he chose to contest the charges. ECF No. 5 at 4, 5, and 13 ("[I]n our view, [Petitioner] faced a significant risk of being convicted of a broad range of conduct that would carry stiffer penalties as compared to those likely to result from pleading guilty. . . . [W]e advised [Petitioner] that he had to make a personal risk-based determination of which course of action to take."); ECF No. 14 at 3 (Counsel advised Petitioner that "the evidence that the [USAO] could adduce created a significant risk that [Petitioner] could be convicted if he proceeded to trial."); 22–23. The *only* piece of evidence Petitioner provides to counteract this overwhelming narrative is one text

message from an associate working on Attorney Cowley's team at McGuireWoods where the associate, in connection with sentencing preparation (thus, well after Petitioner's decision to plead guilty had passed) wrote that he "certainly agree[d] [that] there was no conspiracy." ECF No. 8 at 13; ECF No. 14 at 21. But the petition only asserted that Attorneys Krueger and Cowley were deficient, not that additional members of his team were. And one text message from another attorney does not support that either Attorney Krueger or Attorney Cowley held a personal belief that Petitioner was innocent. Further, even if there *was* evidence to support that both Attorneys Krueger and Cowley wholeheartedly believed in Petitioner's innocence, given their perceived risk of Petitioner being found guilty at trial, it would have been a reasonable strategy to withhold those personal beliefs and merely present Petitioner with the information so that he could make his own personal decision. This is especially true because Petitioner himself was an attorney and was especially well-equipped to weigh the risks and benefits of a guilty plea. *See Taglia*, 922 F.2d at 417.

Further, ineffective assistance "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. Counsel's personal belief about Petitioner's guilt or innocence is, therefore, irrelevant. Petitioner has not provided any evidence to support the factual basis for this ground, nor has he provided even *one* case to support his theory that counsel can be deficient for failing to communicate a personal belief as to a client's innocence. Because he fails the first prong of the *Strickland* analysis, the Court will decline to analyze the prejudice prong.

### 4.2.4 Overall Finding and the Withdrawal Window

Petitioner's overall argument seems to focus on the "20-day window" where he alleges that he was torn about whether to withdraw his guilty plea and Counsel failed to properly advise him. ECF No. 8 at 8 ("[C]ounsel's representation fell below th[e] constitutional standard during the 20-day window when [Petitioner] possessed an absolute right to withdraw his guilty plea."); ECF No. 17 at 1 ("[T]he performance of [Petitioner's] [C]ounsel during the critical 20-day window following his plea colloquy fell far short of th[e] constitutional standard."); *see generally* ECF Nos. 8 and 17; *see also* ECF No. 1 at 33, 36. Petitioner makes much of the fact that his Counsel did not proactively lay out each and every risk and advantage of withdrawing his plea *during that 20-day window*, ECF No. 8 at 9, but as Counsel note, they had already "engaged in detailed communications with [Petitioner]" about those same risks and advantages "[i]n the months preceding [his] decision to plead guilty." ECF No. 14 at 2. Counsel further "engaged with [Petitioner] to answer questions he had while making his decision with respect to filing a withdrawal motion, including assessing the strengths and weaknesses of the [USAO's] case" and they prepared a withdrawal motion for him in the event that he elected to withdraw the plea. *Id.* at 3–4; ECF Nos. 14-1, 14-2, 14-3, 14-4; ECF No. 8-1. The only testimony under penalty of perjury that the Court has in this case, ECF No. 9, does not even suggest that Petitioner requested and refused any meetings or input from his Counsel. Indeed, the record suggests that, had he asked, Counsel would have made time to discuss the topic more with him.

"Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief." *Peoples*, 403 F.3d at 848 (citing *Bell*, 535 U.S. at 697; *Strickland*, 466 U.S. at 690; and *Gilmore*, 126 F.3d at 881–84). When viewed on the whole, it is clear that Counsel provided Petitioner with competent, zealous legal assistance and that they were very responsive to his every question and concern. Petitioner's efforts to criticize and exaggerate the effect of certain strategic choices (that he often had a direct input in) or one-liners from his Counsel and their team members falls woefully short of demonstrating a basis for ineffective assistance of counsel.

### 4.3 Whether a Hearing Is Required

"[W]here the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief," the Court need not hold an evidentiary hearing. *Torzala v. United States*, 545 F.3d 517, 525 (7th Cir. 2008) (quoting *Cooper v. United States*, 378 F.3d 638, 641–42 (7th Cir. 2004)). A hearing is also not required "if the petitioner makes allegations that are 'vague, conclusory, or palpably incredible,' rather than 'detailed and specific.'" *Gaylord v. United States*, 829 F.3d 500, 506–07 (7th Cir. 2016) (quoting *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001)).

Petitioner asserts that a hearing is required in this case to resolve "several critical factual disputes." ECF No. 8 at 16. Respondent contends that this is a case where the record shows conclusively that Petitioner is entitled to no relief, therefore no hearing is necessary. ECF No. 15 at 27. The Court agrees with Respondent and will address each of Petitioner's factual concerns in turn. The Court reiterates here that the *only* testimony from

Petitioner is contained in his sole declaration. Petitioner did not sign his petition, nor did he provide any additional declarations. *Supra* note 4.

First, Petitioner argues that a hearing is necessary to determine "the substance of the advice" Counsel provided to Petitioner during the 20-day withdrawal window. ECF No. 8 at 16. He claims that Petitioner's evidence that he was "in sustained distress" and questioning his plea is inconsistent with Counsel's declaration that "asserts they went over the advantage and disadvantages of withdrawing his plea" with Petitioner. *Id.* The Court sees no dispute of fact there. It can be equally true that Counsel discussed the risks and advantages with Petitioner and that he was still in distress and "50/50" on whether to withdraw at certain points in that 20-day window. Further, even if the Court credited as evidence Petitioner's attorney's assertion that Counsel "failed to engage [Petitioner] in a substantive discussion" about his options during the 20-day window," *id.* at 9, there was still clearly no deficiency in Counsel's representation, because they had those same discussions prior to the 20-day window and were readily available and answering any questions Petitioner put to them during the 20-day window. *See supra* Section 4.2.4.

Second, Petitioner claims that a factual dispute exists as to the impact of his Counsel's allegedly incorrect legal advice about the required mens rea for his charged crime. ECF No. 8 at 16. But as Petitioner argued in his reply, this is not a substantive ground but rather mere "historical context . . . relevant to the prejudice analysis." ECF No. 17 at 2. Because the Court has found that Counsel were not constitutionally deficient as to any of Petitioner's timely asserted grounds, there is no need to resolve a factual dispute relevant to prejudice only. *Ruhl*, 743 F.3d at 1092 ("If one [of the

*Strickland*] prong[s] is found to be insufficient, the court need not address the other prong." (citing *Strickland*, 466 U.S. at 697)).

Finally, Petitioner asserts that he is entitled to "explore[] through live testimony" why an attorney working on Attorney Cowley's team (who was nowhere mentioned in the petition) believed that no conspiracy existed. ECF No. 8 at 16. First, Petitioner identifies no factual dispute whatsoever as to this, nor is one supported by anything in the record. The record on this point conclusively shows that Petitioner is entitled to no relief on this ground. *See supra* 4.2.3.

Petitioner has advanced no factual dispute requiring a hearing in this case and the Court, to the contrary, finds that "the motion, files, and records of th[is] case conclusively show that [Petitioner] is entitled to no relief." *Torzala*, 545 F.3d at 525 (citation omitted). Therefore, no hearing is necessary here.

### 5. MOTIONS TO RESTRICT

Counsel move the Court to restrict their affidavits, ECF Nos. 5 and 14. ECF Nos. 4 and 13. Counsel move "out of an abundance of caution," and in doing so they rely exclusively on ABA Comment 16 to Wisconsin Supreme Court Rule 20:1.6. ECF No. 4 at 2; ECF No. 13 at 3.

"Once filed with the [C]ourt, . . . '[d]ocuments that affect the disposition of federal litigation are presumptively open to public view . . . unless a statute, rule, or privilege justifies confidentiality.'" *City of Greenville v. Sygnenta Crop Prot., LLC*, 764 F.3d 695, 697 (7th Cir. 2014) (quoting *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010)); *see also id.* ("[L]itigants who enjoy publicly subsidized dispute resolution should expect public oversight." (citing *Union Oil Co. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000)). This presumption applies to materials that "influence[] or underpin[]" a judicial

decision. *Id.* (citing *Baxter Int'l, Inc. v. Abbott Lab'ys.,* 297 F.3d 544, 545 (7th Cir. 2002)).

Ordinarily, the attorney-client privilege provides an exception to the presumption of confidentiality, but this is not so when a litigant puts his attorney's counsel at issue in a lawsuit. By challenging the sufficiency of his attorney's services, such a litigant impliedly waives the attorney-client privilege as to those matters. *Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation." (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3d Cir. 1994)). "Implied waiver of the privilege can be found when a petitioner asserts ineffective assistance of counsel in a habeas case." *Knope v. United States,* No. 13-C-0043, 2015 WL 2185990, at *2 (E.D. Wis. May 11, 2015) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." (quoting *Bittaker v. Woodford,* 331 F.3d 715, 716 (9th Cir. 2003) and citing *United States v. Pinson,* 584 F.3d 972, 978 (10th Cir. 2009) and *Jenkins v. United States,* No. 09-CV-713, 2010 WL 145850, at *1, *2 (E.D. Wis. Jan. 8, 2010))).

While no party opposes Counsel's motions to restrict, *see* ECF No. 4 at 2–3 and ECF No. 13 at 4, there is no good cause to grant them here. As Petitioner recognizes, he has waived his attorney-client privilege concerning anything that he put at issue in this case. *Garcia,* 58 F.3d at 1175; *see also* ECF No. 10 at 3 (Petitioner's post-conviction counsel asserted to Attorneys Krueger and Cowley that Petitioner "understands that he has waived privilege with respect to anything he has put into issue").

Because Counsel's affidavits are mere responses to the very allegations that Petitioner chose to put in issue, and because those same affidavits underpin the bases for the Court's findings in this Order, the Court will deny Counsel's motions to restrict. The Court will instruct the Clerk of Court to remove from restriction the documents at ECF Nos. 5, 5-1, 5-2, 5-3, 14, 14-1, 14-2, 14-3, 14-4, and 14-5. The Court will further grant Counsel's request for a finding that Petitioner waived attorney-client privilege as to the matter he put in issue in his petition and his subsequent brief and declaration in support. ECF No. 10 at 1.

## 6. CONCLUSION

For the reasons stated above, the Court finds each of Petitioner's claims to be without merit, and his motion to vacate his sentence must be denied. Further, Attorneys Krueger and Cowley's motions to restrict, ECF Nos. 4 and 13, will be denied, and their request that the Court make a finding that Petitioner waived his attorney-client privilege as to the allegations in his opening brief and accompanying declaration, ECF No. 10 at 1 (citing ECF Nos. 8 and 9), will be granted.

Under Rule 11(a) of the Rules Governing Section 2255 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In light of the well-settled principles

governing the disposition of Petitioner's claims, as outlined above, the Court cannot fairly conclude that reasonable jurists would debate whether his motion should be decided differently; as a consequence, the Court must deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner Jack Daly's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Interested Parties Matthew Krueger and Jason Cowley's motions to restrict, ECF Nos. 4 and 13, be and the same are hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Clerk of Court remove from restriction the documents at ECF Nos. 5, 5-1, 5-2, 5-3, 14, 14-1, 14-2, 14-3, 14-4, and 14-5;

**IT IS FURTHER ORDERED** that Interested Parties Matthew Krueger and Jason Cowley's request that the Court find that Petitioner Jack Daly waived his attorney-client privilege as to the allegations in his opening brief and accompanying declaration, ECF No. 10 at 1, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2026.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. *See* FED. R. APP. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* FED. R. APP. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* FED. R. CIV. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Case 2:24-cv-01678-JPS    Filed 06/30/26    Page 35 of 35    Document 18